UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

GEORGE H. ROBINSON,

                 Petitioner,

        v.                         9:00-CV-0591
                                           (LEK/GHL)

CHRISTOPHER ARTUZ, Supt., Green
Haven Corr. Facility,

                 Respondent.

_____

APPEARANCES:                    OF COUNSEL:

GEORGE H. ROBINSON
Petitioner, *pro se*
97-B-2096
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ELIOT SPITZER          MARIA MORAN, Esq.
Office of Attorney General       Assistant Attorney General
State of New York
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    BACKGROUND

### A.    State Court Proceedings

According to the testimony adduced at trial, on the evening of March 7, 1997,

Zachary Tucker met petitioner, *pro se* George H. Robinson, at the home of Robinson's

mother, Lorreta Robinson, in Delhi, New York.  *See* Transcript of Trial of George H.

Robinson (8/4/97) ("Trial Tr.") at pp. 228-29.  The two drank some beer, after which

they left the home to buy cigarettes.  Trial Tr. at pp. 229-30.  As they walked back to the

residence after their purchase, Robinson noticed a blue minivan parked on a street.  Trial

Tr. at pp. 230-31.  Tucker testified that Robinson then entered that vehicle, started the

van, and, after Tucker joined Robinson in the vehicle, Robinson drove for a period of

time and eventually parked the van on the driveway of a residence in Bovina, New

York.  Trial Tr. at pp. 231-32.[1]  Tucker claimed that the two then entered that home

through a door that was partially ajar, Trial Tr. at p. 232, after which they began

removing some items from the house.  Specifically, Robinson claimed that he removed a

shotgun while Tucker removed a BB gun, BBS and ammunition for the shotgun.  Trial

Tr. at pp. 233-37.  The two allegedly placed the items in the van, after which Robinson

drove the two to another home approximately one half mile away from the site of the

Sturino residence.  Trial Tr. at p. 239.  Robinson's initial attempt to enter that second

home through its front door proved unsuccessful, however he succeeded in gaining entry

into that residence when he broke a window and climbed into the home through that

opening.  Trial Tr. at pp. 239-40.[2]  Petitioner then opened the front door to enable

_____

[1]      The residence was subsequently determined to belong to Frank Sturino.
Trial Tr. at pp. 186-88 ("Sturino residence").

[2]      The second residence was owned by Gregory Camp.  Trial Tr. at p. 196
("Camp residence").

Tucker to enter the home, and Tucker proceeded to remove a video cassette recorder ("VCR") and a pair of radios from the house. Trial Tr. at pp. 241-42. Robinson in turn removed a bag of liquor as well as a gun cleaning kit from the Camp residence. Trial Tr. at p. 242. As Robinson was placing the stolen goods in the van, however, the shotgun he was holding fired, shooting him in his foot. Trial Tr. at p. 243. Robinson then drove to a friend's house, where an individual named Jim bandaged petitioner's foot. Trial Tr. at pp. 243-44. Tucker and Robinson then returned to Loretta Robinson's home between 4:30 a.m. and 5:00 a.m. on March 8, 1997. Trial Tr. at pp. 245-46. After Tucker helped Robinson bring the stolen goods into that home, Tucker returned to his residence. Trial Tr. at pp. 247-48.

The following day, Tucker met with Robinson and the two agreed that if questioned by the police about the origin of Robinson's gunshot wound, they would both claim that Robinson sustained the injury while he was attempting to repair a shotgun which belonged to a man who had stopped to give both petitioner and Tucker a ride while they were hitchhiking. Trial Tr. at p. 249. Tucker was thereafter questioned by the police about Robinson's injury, and initially told law enforcement agents that petitioner was injured while attempting to clear a jam in a shotgun which belonged to a man who had given both Robinson and Tucker a ride earlier that day. Trial Tr. at p. 249. As Tucker was providing that statement, however, he was informed by the police that his demeanor made it appear as though he was lying. *Id.* Tucker then informed law

3

enforcement about the actual circumstances which led to Robinson's injury.  Trial Tr. at

pp. 249-50.

On March 9, 1997, Trooper John R. Ward of the New York State Police traveled

to the O'Connor Hospital in Delaware County to question Robinson about his injury.

Trial Tr. at pp. 285-87.  After being advised by Trooper Ward of his *Miranda* rights,[3]

Robinson indicated that he was willing to speak with Trooper Ward without the benefit

of counsel.  Trial Tr. at pp. 288-89.  Robinson then claimed that he accidentally shot

himself while attempting to clear a shotgun which belonged to an individual who had

given Robinson and Tucker a ride on the morning of March 9, 1997.  Trial Tr. at pp.

287-88.  Trooper Ward then questioned Loretta Robinson about the origin of petitioner's

injury, and when her statement proved to conflict with the one given by her son, Trooper

Ward located Tucker and questioned him about the incident.  Trial Tr. at 291-92.  After

that interview, Trooper Ward went to Loretta Robinson's home where he recovered

several items which Tucker had indicated to the police had been stolen during the night

of March 7, 1997.[4]  Trial Tr. at pp. 291-93.

On April 21, 1997, a Delaware County grand jury returned a six count indictment

against Robinson.  In that accusatory instrument, petitioner was charged with two counts

---

[3]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]        The property recovered from Loretta Robinson's home included an
ignition cylinder from the stolen van, two AM/FM radios and a Remington brand
shotgun.  Trial Tr. at pp. 293-95.

of fourth degree grand larceny (arising out of the alleged thefts of the van and shotgun), two counts of second degree burglary (based upon Robinson's claimed entry into the Sturino and Camp residences), petit larceny (relating to the VCR and radios purportedly taken during the burglary of the Camp residence) and one count of criminal possession of a weapon in the fourth degree (arising out of Robinson's claimed possession of the stolen shotgun after having been previously convicted of a felony). *See* Indictment No. 97-020 (reproduced in Appellant's Appendix ) ("App.") at pp. A1-3 ("Indictment").

Tucker was also criminally charged in connection with his conduct during the early morning hours of March 8, 1997.[5] Trial Tr. at p. 250. Following negotiations with the District Attorney's office, Tucker agreed to plead guilty to those criminal charges in exchange for his truthful testimony at Robinson's trial. Trial Tr. at pp. 250-51.[6]

Robinson's trial commenced on August 4, 1997 in Delaware County Court with County Court Judge Robert L. Estes presiding. At that proceeding, Robinson testified in his own defense and claimed that on the morning of March 8, 1997, Tucker arrived at Loretta Robinson's home with, *inter alia*, the VCR, two radios, a shotgun and a BB gun. Trial Tr. at 331. When petitioner asked Tucker from where he had obtained those items, Robinson testified that Tucker claimed that: i) the radios belonged to his brother; ii) he

---

[5]     This Court was not provided with a copy of the criminal indictment returned against Tucker.

[6]     Following his guilty plea, Tucker was sentenced to three years probation and ordered to perform two hundred hours of community service as a result of his conviction. Trial Tr. at p. 250.

5

owned the VCR but was willing to sell it to petitioner for $50.00; and iii) the shotgun and BB gun belonged to Tucker's father.  Trial Tr. at pp. 331-32.  Petitioner further testified that later that day, the two went into some nearby woods where they drank alcohol and fired the guns.  Trial Tr. at pp. 332-33.  Petitioner testified that while he and Tucker were in the woods, Tucker became "belligerent" and began threatening Robinson with the shotgun.  Trial Tr. at p. 334.  Petitioner explained that as he attempted to wrest the shotgun from Tucker's hand, it discharged, resulting in the shotgun wound to Robinson's foot.  Trial Tr. at pp. 334-35.

At the conclusion of his trial, Robinson was found guilty of the fourth degree larceny charge arising out of the theft of the van, the second degree burglary conviction relating to the Camp residence, the petit larceny charge relating to the items stolen from that home and the weapons possession charge.  Trial Tr. at pp. 498-500.  However, the jury acquitted Robinson of the burglary charge relating to the Sturino residence and the larceny charge relating to the alleged theft of the shotgun.  Trial Tr. at p. 499.  The County Court thereafter sentenced Robinson to a term of fifteen years imprisonment on the burglary conviction, two to four years imprisonment on the grand larceny conviction, and one year each on the petit larceny and weapons possession convictions.  App. at pp. A30-32.  The County Court also ordered that all of those sentences be served consecutively, resulting in an aggregate indeterminate sentence of nineteen to twenty-one years imprisonment.  *Id.*

Robinson appealed his convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department.  That court affirmed the convictions, however it modified the sentences and ordered them to be served concurrently.  *See People v. Robinson*, 258 A.D.2d 817 (3d Dept. 1999).  The New York Court of Appeals thereafter denied Robinson's application for leave to appeal.  *People v. Robinson*, 93 N.Y.2d 978 (1999).

On April 12, 1999, Robinson filed a motion to vacate his judgment of conviction pursuant to Section 440.10 of New York's Criminal Procedure Law ("CPL").  In that application, Robinson argued that juror number six, who was a member of the jury that convicted Robinson, held a "grudge" against Robinson and that other members of the jury agreed with that juror to convict Robinson so that they could "go home."  *See* Motion Pursuant to CPL § 440.10 (4/12/99) ("CPL Motion") at ¶ 5.[7]  The County Court denied that application without a hearing, finding the motion to have been based entirely upon hearsay evidence.  *See People v. Robinson*, No. 97-277 (Delaware Cty. Ct. June 3, 1999) ("June, 1999 Decision").  The Appellate Division denied Robinson's application for leave to appeal the County Court's decision denying petitioner's CPL Motion.  *See People v. Robinson*, No. 11370, slip op. at p. 1 (3d Dept. Aug. 30, 1999).

---

[7]     In his petition, Robinson refers to the individual as "juror number four." Petition at ¶ 12(b).  However, in his CPL Motion, Robinson refers to the juror as juror number six.  *See* CPL Motion at ¶ 5.  From the Court's review of the *voir dire*, it appears as though the individual is properly referred to as juror number six.  Therefore, throughout this Report, this Court will refer to that individual as juror number six.

**B.     This Proceeding**

Petitioner originally commenced this action in the Southern District of New York on February 7, 2000.  *See* Petition (Dkt. No. 1).  Since the convictions that form the basis of the petition occurred within the geographical boundaries of the Northern District of New York, Chief Judge Thomas P. Griesa of the Southern District transferred the matter to this District.  Dkt. No. 3.  In his Petition, Robinson alleges that:  1) Tucker's trial testimony was obtained in violation of 18 U.S.C. § 201(c)(2), which prohibits individuals from promising anything of value to any person for, or because of, their testimony at a trial; and 2) he was deprived of his right to a fair trial when juror number six failed to disclose during *voir dire* that he "harbored a grievance against" Robinson.  *See* Petition.  Then-United States Magistrate Judge Gary L. Sharpe ordered a response to the petition (Dkt. No. 5), and on July 24, 2000, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and memorandum of law in opposition to the petition.  Dkt. Nos. 8, 9.  Petitioner thereafter filed a "traverse" in further support of his application.  Dkt. No. 10.  By Order dated February 12, 2004, the Hon. Frederick J. Scullin, Jr., Chief Judge, re-assigned this matter to this Court for the issuance of a report and recommendation, *see* Dkt. No. 15, which this Court now issues pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

## II.   **DISCUSSION**

### A.   **Ground One**

In his first ground for relief, Robinson argues that he is entitled to a new trial because at trial, Tucker admitted that his testimony against Robinson resulted from a plea agreement with the prosecution.  Petition at pp. 5-5a.  Petitioner argues that because the prosecution offered something of value to Tucker in exchange for his trial testimony, that agreement violated 18 U.S.C. § 201(c)(2), which prohibits the promising of anything of value to an individual in exchange for his or her testimony at a trial. Petition at 5a.  Robinson argues that, as a result, Tucker's trial testimony must be stricken from the record and his habeas application be granted.  *Id.*

### 1.   **Failure to Exhaust**

Initially, the Court notes that petitioner may well be procedurally barred from asserting this ground.  Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect the petitioner's rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118 (1995). This exhaustion requirement is satisfied if the claim has been "fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state

courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*); *Morales v. Miller*, 41 F.Supp.2d 364, 374 (E.D.N.Y. 1999).  Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192; *Morales*, 41 F.Supp.2d at 374.

Nowhere in his petition or traverse does Robinson refer this Court to any portion of the state court record wherein he alleged that Tucker's testimony should have been stricken because the plea agreement between the prosecution and Tucker ran afoul of 18 U.S.C. § 201(c)(2).[8] Moreover, this Court's review of the state court records, as well as the documents submitted by the parties in conjunction with the present application for habeas relief, indicates that Robinson never asserted the claim raised in his first ground for relief in the state courts.

When a claim has never been presented to the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118

_____

[8]       Although this claim is based upon a federal statute, this Court notes that "[t]he exhaustion doctrine ... requires ... a habeas petitioner seeking to upset his or her state conviction on federal grounds must first give the state courts a fair opportunity to pass upon all of the federal claims asserted in the petition." *Allah v. Kelly*, 32 F.Supp.2d 592, 592 (W.D.N.Y. 1998) (citing *Daye*, 696 F.2d at 191); *Rose v. Lundy*, 455 U.S. 509 (1982)).

F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir.

2000), *cert. denied*, 532 U.S. 943 (2001).[9]  Therefore, this Court must determine

whether it would be futile for Robinson to present this claim to the state courts.

Robinson cannot now pursue his claim challenging the propriety of Tucker's

testimony through an appeal to the Third Department because a defendant is "entitled to

one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91

(citations omitted).  Moreover, since "New York does not otherwise permit collateral

attacks on a conviction when the defendant unjustifiably failed to raise the issue on

direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner could not now properly raise

this claim, which is necessarily based on matters contained in the state court record, in a

second motion to vacate his judgment of conviction pursuant to CPL § 440.10.  *See*

*Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert.*

*denied*, 514 U.S. 1054 (1995).  Since there is an absence of available state remedies

available to petitioner regarding this claim, it must be "deemed exhausted" for purposes

of this habeas application.  *Spence v. Superintendent, Great Meadow Correctional*

*Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002

WL 31102612, at *10  (E.D.N.Y. Sept. 18, 2002); *DeLeon v. Duncan*, No. 99CIV9086,

---

[9]        Under AEDPA, a federal district court has the authority to deny (but not
grant) an unexhausted claim on the merits, and consider the exhausted claims on the
merits.  *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687
(S.D.N.Y. 1998).

2002 WL 1997892, at *3 (S.D.N.Y. Aug. 28, 2002) (citations omitted).[10]  Although the claim is "deemed exhausted," it is also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Federal courts may only consider the substance of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[11]  *See St. Helen v. Senkowski*, 374 184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded his ability to fully exhaust his federal claim.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, 2002 WL

_____

[10]    The Court notes that petitioner has not alleged, and could not properly argue, that the inclusion of this argument in his appeal to the Appellate Division, or one based upon New York's related bribery statute, New York Penal Law § 215.00, would not have adequately protected his rights.

[11]    A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.)), *cert. denied*, 537 U.S. 955 (2002).

922260, at *3 (S.D.N.Y. May 7, 2002).  Examples of external factors include

"interference by officials," ineffective assistance of counsel, or that "the factual or legal

basis for a claim was not reasonably available" at trial or on direct appeal.  *Murray*, 477

U.S. at 488; *Bossett*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d

1202, 1206 (2d Cir. 1992); *Lovacco v. Stinson*, 2004 WL 1373167, at *3 (E.D.N.Y. June

11, 2004) (citing *Murray*).[12]

      Robinson has never alleged, in either the state courts or this proceeding, that he

received ineffective assistance because his appellate counsel failed to claim on appeal

that Tucker's testimony should have been stricken because it was obtained in violation

of the federal bribery statute.  Since Robinson has not established, in either his petition

or traverse, cause for his failure to exhaust the above-referenced claim, this Court need

not decide whether he suffered prejudice because, absent proof that a constitutional

violation has probably resulted in the conviction of one who is actually innocent, federal

habeas relief is unavailable as to procedurally barred claims unless ***both*** cause and

prejudice is established.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (emphasis

added); *McLeod v. Moscicki*, 2003 WL 22427757, at *8 (S.D.N.Y. Oct. 22, 2003)

(Francis, M.J.) (citing *Murray*, 477 U.S. at 494); *You v. Bennett*, 2003 WL 21847008, at

---

      [12]    However, "[a]ttorney ignorance or inadvertence is not 'cause' because the
attorney is the petitioner's agent when acting, or failing to act, in furtherance of the
litigation, and the petitioner must 'bear the risk of attorney error.'"  *Coleman*, 501 U.S. at
752-53 (quoting *Murray*, 477 U.S. at 488).

*7 (E.D.N.Y. July 29, 2003) (citing *Coleman*, 501 U.S. at 750); *Ayuso v. Artuz*, 2001

WL 246437, at *9 (S.D.N.Y. Mar. 7, 2001); *Pou v. Keane*, 977 F.Supp. 577, 581

(N.D.N.Y. 1997) (Kahn, J.).

 Additionally, after reviewing the state court record and the file in this matter, this

Court concludes that petitioner has not demonstrated that the denial of this procedurally

defaulted claim would result in the continued incarceration of an individual who is

actually innocent of any of the crimes of which he was convicted.  Specifically, after

having reviewed the trial transcript concerning petitioner's trial, this Court finds that

ample evidence was adduced at trial, which this Court has discussed more fully above,

that supports the jury's verdict concerning the fourth degree larceny conviction arising

out of the theft of the van, the burglary conviction relating to the Camp residence, the

petit larceny conviction arising out of the items stolen from that home, as well as the

weapons possession charge.

 Although respondent did not argue that petitioner's first ground for relief was

procedurally barred because it was unexhausted, *see* Dkt. No. 9 at pp. 4-9, the Court

notes that 28 U.S.C. § 2254 specifically provides that "[a] state shall not be deemed to

have waived the exhaustion requirement or be estopped from reliance upon the

requirement unless the State, through counsel, expressly waives the requirement."  *See*

28 U.S.C. § 2254(b)(3); *see also Banks v. Dretke*, ___ U.S. ___, ___, 124 S.Ct. 1256,

1280 (2004) ("AEDPA forbids a finding that exhaustion has been waived absent an

express waiver by the State") (citing 28 U.S.C. § 2254(b)(3)).  In the present action, respondent has not expressly waived the exhaustion requirement with respect to Robinson's first ground for relief.  Although a district court can *sua sponte* raise a petitioner's failure to exhaust as a basis for the denial of federal habeas relief, the federal court must first afford the petitioner notice of the proposed disposition of the claim on procedural grounds, as well as an opportunity to be heard on this issue.  *See Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (citing *United States v. Vincent*, 507 F.2d 1309, 1312 (2d Cir.1974)); *see also King v. Mantello*, 2002 WL 32100251, at *15-16 & n.8. (E.D.N.Y.  Nov. 19, 2002) (Go, M.J.), *adopted*, *King v. Mantello*, 2003 WL 1873618 (E.D.N.Y. Apr. 11, 2003).

Since Robinson has procedurally defaulted on his first ground for relief and failed to establish either cause for that default or that he is actually innocent of any of the crimes which he challenges in this action, this Court recommends that ground one be denied as procedurally barred.  If petitioner believes that the above-referenced claim should not be deemed exhausted and procedurally barred, he must raise this contention in his timely-filed objections to this report and recommendation.  *See Acosta*, 221 F.3d at 121.

### 2.   Merits of Ground One

Even assuming, *arguendo*, that this Court could properly excuse Robinson's failure to exhaust, the Court would nevertheless recommend that the claim be dismissed

as patently frivolous.  The substance of this ground is based upon petitioner's claim that the prosecution violated the federal bribery statute, 18 U.S.C. § 201, by entering into a plea agreement with Tucker in exchange for his trial testimony against Robinson.  *See* Petition at pp. 5-5a.  However, Senior Judge Neal P. McCurn of this District has previously considered an argument remarkably similar to the one asserted by Robinson in this action.  Specifically, in *U.S. v. Terry*, 1999 WL 20911 (N.D.N.Y. Jan. 12, 1999), Judge McCurn was presented with a claim that a cooperation agreement between the prosecutor and a government witness violated 18 U.S.C. § 201(c).  In soundly rejecting that argument, Judge McCurn sagely noted that application of the statute to prosecutors "would work an obvious absurdity."  *Terry*, 1999 WL 20911, at *4 (citation and internal quotation omitted).  Judge McCurn continued by noting that "many statutes ... authorize prosecutors and courts to provide benefits to cooperating witnesses," and concluded that a finding that 18 U.S.C. § 201(c) prohibited such agreements would "seriously undermine the ability of prosecutors to prosecute."  *Terry*, 1999 WL 20911, at *4.  This Court agrees with Judge McCurn that application of 18 U.S.C. § 201(c) to prosecutors, thereby effectively preventing them from legally entering into cooperation agreements with potential witnesses in exchange for their truthful trial testimony, would be absurd. Accordingly, this Court alternatively recommends that this ground in the petition be dismissed as patently frivolous.

16

**B.** **Ground Two**

In his second and final ground seeking federal habeas intervention, Robinson

argues that his right to a fair trial was violated due to the "bias and misconduct of a

juror." Petition at p. 5. In support of this claim, petitioner argues that at the time of his

criminal trial, he was "'seeing'" Rose G., whom petitioner alleges was married at the

time of his trial to the brother of juror number six. *Id.* Robinson claims that the juror

"not only knew the Petitioner, but harbored a grievance against him," and "lied about his

knowledge of the Petitioner during voir dire, so that he could be selected for Petitioner's

trial," where he could then "use[] his dislike for the Petitioner to influence the jury to

find the Petitioner guilty." Petition at attached p. 5a. As support for this claim,

Robinson notes that the County Court "singled out" juror number six at the time of

Robinson's trial when that court was describing the presumption of innocence to which

all criminal defendants are entitled. *Id.*; *see also* Trial Tr. at p. 124.

### i.     **Clearly Established Supreme Court Precedent**

The Sixth Amendment of the United States Constitution guarantees individuals

the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968).

"The right to a fair trial ... has been called 'the most fundamental of all freedoms.'"

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 586 (1976) (Brennan, J., concurring)

(quoting *Estes v. Texas*, 381 U.S. 532, 540 (1965)). "It is a right essential to the

preservation and enjoyment of all other rights, providing a necessary means of

safeguarding personal liberties against government oppression." *Stuart*, 427 U.S. at 586

17

(citing *Rideau v. Louisiana*, 373 U.S. 723,  726-727 (1963)); *see also, United States v. Alvarez-Machain*, 504 U.S. 655, 661-62 (1992) (due process of law is satisfied "when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards") (citation omitted); *Taylor v. Hayes*, 418 U.S. 488, 501-02 (1974). However, a party claiming that his right to a fair trial was violated due to misconduct on the part of a juror bears a heavy burden.  He must establish not only that the juror possessed a preconceived notion about the petitioner's guilt, but also that the juror could not "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1981).  Whether a juror is impartial is a matter "of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036-37 (1984) (citation omitted); *see also Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (trial judge's determination regarding a juror's impartiality is a factual determination by a trial court) (citation omitted).

    ii.    **Contrary to, or Unreasonable Application of, Supreme Court Precedent**

The trial court considered and rejected Robinson's claim that he was denied his right to a fair trial due to the misconduct of a member of the jury that convicted petitioner.  Specifically, the trial court found that Robinson had only offered hearsay

evidence to support his allegations, and had therefore failed to carry his burden of proof in that collateral challenge to his conviction.  June, 1999 Decision at p. 1.  This Court therefore considers whether that decision is contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.[13]

In considering this claim, this Court must ascertain whether there is "'fair support in the record for the state court's conclusion that the juror[] [would be] impartial.'" *Comfort v. Kelly*, 1998 WL 384613, at *10 (W.D.N.Y. May 14, 1998) (Heckman, M.J.) (quoting *Patton,* 467 U.S. at 1038), *adopted*, *Comfort v. Kelly*, 1999 WL 955508 (W.D.N.Y. Oct. 5, 1999).  This "determination is essentially one of credibility, ... [and] the trial court's resolution of such questions is entitled ... to 'special deference.' " *Comfort*, 1998 WL 384613, at *10 (quoting *Patton,* 467 U.S. at 1038) (other citation omitted).  Petitioner correctly notes that during *voir dire*, juror number six's conduct when the County Court was discussing the presumption of innocence caused the trial court to address that juror individually.  Trial Tr. at 124.  However, when asked by the court whether that legal precept caused him trouble, the juror plainly indicated that it did not.  *Id*.  Subsequent to that exchange, Robinson's counsel was afforded the opportunity to question all of the prospective jurors – including juror number six – and chose, apparently for strategic reasons, not to question him further about his beliefs concerning

---

[13]     As noted above, the Appellate Division denied Robinson's application for leave to appeal the trial court's June, 1999 Decision.  *See Robinson*, No. 11370, slip op. at p. 1.  Therefore, AEDPA deference is owed to the trial court's decision denying Robinson's CPL Motion.

the presumption of innocence.  Trial Tr. at pp. 133-36.  Thus, there is no record support

for petitioner's claim that juror number six could not be impartial.  Moreover, although

petitioner claims that the juror "not only knew the Petitioner, but harbored a grievance

against him," Petition at p. 5, the only "proof" of these allegations is based on the

hearsay statements of an apparent acquaintance of petitioner submitted along with the

CPL Motion, as well as petitioner's self-serving statement that he had a relationship

with the sister-in-law of juror number six.  *See* Petition at attached pp. A4-5.  However,

the record casts serious doubt on these allegations.  Specifically, the Court's review of

the trial transcript establishes that Robinson and his counsel were present during the *voir*

*dire* when the prospective jurors – including juror number six – indicated that they did

not know Robinson.  Trial Tr. at pp. 15, 116.  Neither petitioner nor his counsel

questioned that juror on this issue,[14] and defense counsel specifically chose not to

challenge juror number six's placement on the jury.  Trial Tr. at pp. 138-39.  Petitioner

has not offered any explanation as to why neither he nor his counsel failed to alert the

trial court during *voir dire* that juror number six allegedly knew petitioner and may not

have been able to be impartial as to Robinson in light of a claimed relationship between

him and juror number six's sister-in-law.  Additionally, no affidavit was presented to the

County Court, or in conjunction with the present application, from ***any*** member of the

jury that convicted petitioner which supports his claim that juror number six harbored a

---

[14]      Juror number six did, however, state that he knew one of the individuals
who might be called as a witness during the course of the trial.  Trial Tr. at p. 117.

"grudge" against petitioner, or that the jury convicted petitioner of any of the crimes charged in the Indictment for any improper reason.  Rather, the only evidence supporting petitioner's claim is the hearsay affidavit of an acquaintance of petitioner, together with Robinson's statement that the juror disliked petitioner.

The Supreme Court has held that "while impaneling a jury the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor." *Dennis v. United States*, 339 U.S. 162, 168 (1950) (citations omitted).  Actual bias, however, is not the mere existence of a preconceived notion as to the guilt or innocence of the defendant.  Rather, it only occurs when the juror ***cannot set aside*** that preconceived notion and render a decision based upon the evidence presented in court.  *See Irvin*, 366 U.S. at 723 (emphasis added); *U.S. v. Sun Myung Moon*, 718 F.2d 1210, 1218-19 (2d Cir. 1983), *cert. denied*, 466 U.S. 971 (1984).  "The appropriate inquiry on habeas review therefore is whether, in the totality of circumstances, the *voir dire* resulted in a jury that was so biased as to render petitioner's trial fundamentally unfair." *Mitchell v. Herbert*, 1998 WL 186766, at *2 (S.D.N.Y. Apr. 20, 1998) (citing *Murphy v. Florida*, 421 U.S. 794, 799 (1975)).

The County Court concluded that Robinson failed to establish his claim that juror number six was biased against Robinson.  This Court similarly finds that petitioner has not established this claim in the present action.  Nor has petitioner shouldered his burden of establishing that juror number six was unable to set aside any preconceived notion he

may have possessed about the petitioner and render a decision in Robinson's case based upon the evidence presented at trial.[15]  The Court therefore concludes that the trial court's denial of this claim is neither contrary to, nor an unreasonable application of, the Supreme Court precedent noted above.  Accordingly, the Court recommends that petitioner's second ground for relief be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated:  January 10, 2005
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[15]     The petitioner has the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Frazier v. New York*, 187 F.Supp.2d 102, 108 (S.D.N.Y. 2002) (citation omitted).